**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORIK TER-GALSTANYAN, INGO GONZALEZ, ALEXIS PULE,<br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KERN, KERN COUNTY SHERIFF'S OFFICE, KERN COUNTY DISTRICT ATTORNEY'S OFFICE, VIDAL CONTRERAS, COURTNEY LEWIS, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 1:22-cv-00645-JLT-CDB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND DENYING AS MOOT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br>(Doc. 9) |

This case arises out of the allegedly unlawful pre-trial detention of Norik Ter-Galstanyan, Ingo Gonzalez, and Alexis Pule for crimes they represent that they did not commit. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging several constitutional violations, against the County of Kern, Kern County Sheriff's Office, Kern County District Attorney's Office, Deputy Sheriff Vidal Contreras, and Kern County District Attorney Courtney Lewis. Pending is Defendants' Motion to Dismiss the First Amended Complaint (Doc. 9) and Request for Judicial Notice (Doc. 10). For the reasons set forth below, Defendants' Motion to Dismiss (Doc. 9) is **GRANTED** and Defendants' Request for Judicial Notice (Doc. 10) is **DENIED AS MOOT**.

I.     <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

In September 2015, officers arrested and detained Plaintiffs on criminal charges tied to

allegedly holding several victims captive. (FAC, Doc. 5 at ¶¶ 18, 28.)[1] During the underlying criminal trial, the D.A. Office allegedly failed to disclose "new discovery" to Plaintiffs, consisting of "25,000 pages of [documents]." (*Id.* at ¶¶ 20–21.) Plaintiffs allege that Lewis and the D.A.'s Office "drafted a memorandum to their supervisors at the District Attorney's office stating in essence that Detective Dustin Contreras . . . had notified other sheriff investigators she was not interested in a warrant being served because she was allegedly concerned for her safety.[2] (*Id.* at ¶ 22.) Though Lewis denied making that statement, Lewis failed to disclose this memorandum to defense counsel for Plaintiffs "until two and [a] half years into the proceedings." (*Id.* at ¶ 24.)

In the criminal trial below, the judge removed Lewis as the prosecutor on Plaintiffs' case, and appointed two other Deputy District Attorneys, with the third and final District Attorney "operat[ing] on the same floor, [and] within the same office" as Lewis." (*Id.* at ¶¶ 25–27.) Eventually, after approximately five years of being held in a pre-trial detention center, the judge dismissed the charges against Plaintiffs, "mainly due to the video evidence that clearly displayed that the alleged victims were not held captive, but rather were free to leave the premises[.]" (*Id.* at ¶¶ 28–30, 61.) Plaintiffs allege that the D.A.'s Office held on to this exculpatory surveillance video evidence throughout the trial and failed to disclose it to Plaintiffs during discovery. (*Id.* at ¶¶ 29–30.)

Plaintiffs seek damages for their alleged civil rights violations under Section 1983. (Doc. 5.) Defendants filed their instant Motion to Dismiss (Doc. 9), which the parties fully briefed thereafter. (Opp'n, Doc. 12; Reply, Doc. 13.) Defendants also filed their Request for Judicial Notice. (Doc. 10.) The matter being fully briefed and ripe for review, the Court will now turn to the merits of the pending motion.

**II.   LEGAL STANDARD**

A.  Rule 12(b)(6)

---

[1] Plaintiffs' Complaint speaks in only vague terms as to the criminal charges brought against the Plaintiffs. Seemingly, the charge indicated in some way that Plaintiffs held people hostage. (*See* Doc. 5 at ¶ 28.)

[2] Once more, Plaintiffs have failed to adequately apprise the Court of pertinent facts in this case. The Court cannot appreciate the significance of this memorandum to the issues raised, as Plaintiffs have failed to allege facts regarding the memorandum's contents. For reasons stated below, *see supra* n.7, the Court declines to take judicial notice of the memorandum, as attached to Defendants' motion.

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a claim in the plaintiff's complaint if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As such, the plausibility standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable inferences in favor of the nonmoving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up). However, "[c]onclusory allegations and unreasonable inferences do not provide [] a basis" for determining a plaintiff is entitled to relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

### III.   DISCUSSION

#### A. Prosecutorial Immunity

As a preliminary matter, Defendants move to dismiss Lewis, contending that she is absolutely immune from suit under § 1983 for her "activities intimately associated with the judicial phase of the criminal process[.]" (Doc. 9 at 3 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). Plaintiffs disagree, and proffer that prosecutors are afforded a type of qualified immunity instead. (*See* Doc. 12 at 7–8.) Indeed, Plaintiffs suggest that the Supreme Court has overruled its *Imbler* decision, as "reforumlat[ed]" to one of qualified immunity in *Harlow v.*

*Fitzgerald*, 457 U.S. 800 (1982) and *Anderson v. Creighton*, 483 U.S. 635 (1987).  (*Id.* at 7.)

Plaintiffs' reading of *Harlow* is incorrect.[3]  In *Harlow*, the Supreme Court stated, very clearly:

> "For officials whose special functions or constitutional status requires complete protection from suit, we have recognized the defense of 'absolute immunity.'  The absolute immunity of legislators, in their legislative functions, . . . and of judges, in their judicial functions, . . . now is well settled.  Our decisions also have extended absolute immunity to certain officials of the Executive Branch.  *These include prosecutors and similar officials*[.]"

*Id.* at 807 (internal citations omitted) (emphasis added); *see also id.* at 810–11 ("We have recognized that the judicial, prosecutorial, and legislative functions require absolute immunity.").  Indeed, *Harlow* mentioned its decision in *Imbler* only twice, in footnotes, (*id.* at 811 n. 16 & 813 n.21), never overruled *Harlow*, and the case only concerned the immunity of "White House aides."  *Id.* at 811.  Also, *Anderson* never mentions *Imbler* likely because it did not concern prosecutorial immunity.  *See generally* 483 U.S. 635.

Rather, "[i]n the years since *Imbler*, [the Supreme Court has] held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, . . . or appears in court to present evidence in support of a search warrant application[.]" *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (internal citations omitted).  Similarly, prosecutors enjoy absolute immunity for other actions that are "directly connected with the conduct of a trial," such as their involvement in "supervision or training" programs, because those acts "necessarily require legal knowledge and the exercise of related discretion[.]" *Id.*

However, "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, . . ., when the prosecutor makes statements to the press, . . ., or when a prosecutor acts as a complaining witness in support of a warrant application[.]" *Id.* (internal citations omitted).  Only when a prosecutor "perform[s] activities outside their core role as courtroom advocates" are they protected "by qualified, rather than absolute, immunity[.]" *Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) ("[S]he is not entitled

---

[3] Instead, the Supreme Court has stated that it "completely reformulated *qualified immunity*" in *Harlow*, not prosecutorial absolute immunity.  *Anderson*, 483 U.S. at 645 (emphasis added).

4

to such protection when [s]he is cast in the role of an administrator or investigative officer rather than that of advocate.") (cleaned up) (internal quotation marks and citation omitted).

Plaintiffs have alleged that Lewis has (1) fabricated evidence and conspired to do so, (Doc. 5 at 6, 9); (2) violated Plaintiffs' civil rights under a theory of supervisorial liability, (*id.* at 10); (3) maliciously prosecuted them, (*id.* at 11); (4) committed a *Brady* violation and conspired to do so, (*id.* at 13); (5) committed *Monell* violations, (*id.* at 15); and (6) deprived them of their Sixth and Fourteenth Amendment rights to a speedy trial, (*id.* at 19). Each claim stems from their allegations that Lewis "drafted [a] memorandum to supervisors at the [D.A.'s] office stating" that Contreras was not interested in serving a warrant, then denied making this "statement,"[4] and failed to "divulge the memorandum to defense counsel for PLAINTIFFS until two and a half years into the proceedings," thereby violating "discovery rules." (Doc. 5 at ¶¶ 22–24 (emphasis in original).)

"Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 913 (9th Cir. 2012) (citation omitted). Importantly, prosecutors "are absolutely immune from liability for the consequences of their advocacy, however inept or malicious, because it is filtered through a neutral and detached judicial body[.]" *Id.* As the Court's focus is "on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful," the Court has no alternative but to confer absolute immunity to Lewis. *Torres*, 793 F.3d at 1051 (internal quotation marks and citation omitted) (emphasis added).

Each cause of action against Lewis originates from her role as an advocate. First, Plaintiffs complain about Lewis's draft of an internal memorandum. (Doc. 5 at ¶ 22.) This is clearly an "internal decision[] and process[]" for which Lewis must enjoy immunity. *Lacey*, 693

---

[4] Notably, Plaintiffs do not allege that this "statement" was an affidavit. *Patterson v. Van Arsdel*, 883 F.3d 826, 831 (9th Cir. 2018) (citing *Cruz v. Kauai Cnty.*, 279 F.3d 1064, 1067 (9th Cir. 2002)).

F.3d at 913; *see also Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (prosecutor was absolutely immune for preparing and filing charging documents—"the information and the motion for an arrest warrant" because such actions were "part of the advocate's function"). Furthermore, "[a] prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges," as is their "decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction," even though such actions may constitute a *Brady* violation. *Broam v. Bogan*, 320 F.3d 1023, 1029–30 (9th Cir. 2003) (citations omitted).

None of Lewis's acts, as set forth in the Complaint, were plausibly "administrative" or "investigative," but rather, all flowed from her function as an advocate, taken in her role as a prosecutor in the case against Plaintiffs. *Patterson*, 883 F.3d at 830. For the same reasons, the Kern County District Attorney's Office also enjoys absolute immunity. *Barnes v. Santa Clara Cnty. Dist. Att'ys Off.*, No. 20-cv-02113-YGR (PR), 2020 WL 3971615, at *2 (N.D. Cal. July 14, 2020).[5] The Court therefore **GRANTS** Defendants' motion to dismiss (Doc. 9) on this basis and **DISMISSES WITH PREJUDICE** all claims against Defendants Courtney Lewis and the Kern County District Attorney's Office in this action.

B. <u>Fabrication of Evidence Claim</u>

Plaintiffs first allege that Defendants fabricated evidence, in violation of their Fifth and Fourteenth Amendment rights to due process.[6] (Doc. 5 at 8–9.) Defendants move to dismiss this claim because Plaintiffs' Complaint "does not allege a single, specific piece of evidence that was fabricated." (Doc. 9 at 5.) Plaintiffs disagree and point to the videotape evidence, the D.A. Office's Memorandum,[7] and the fact that the new District Attorney worked in the same office as

---

[5] A separate reason counsels in favor of dismissal of both defendants. When a county district attorney acts in her prosecutorial capacity, she then acts on behalf of the State. *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008); *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1070 (C.D. Cal. 2012). As such, California district attorneys possess Eleventh Amendment immunity when "acting in [their] prosecutorial capacity." *Id.* (citations omitted). The same is true for California district attorney's offices. *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014).

[6] The Ninth Circuit has made clear that this claim falls within the purview of the Fourteenth Amendment, not the Fifth Amendment. *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017).

[7] Plaintiffs have attached the D.A. Office's Memorandum as Exhibit A to their Opposition. (Ex. A, Doc. 12-2.) When ruling on a motion to dismiss under Rule 12(b)(6), the Court may not review documents

6

the recused District Attorney. (Doc. 12 at 10–13.)

"The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc)). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id.* at 798 (citation omitted).[8] This can be shown using either circumstantial or direct evidence. *Id.* at 793. "For example, evidence that officials continued their investigation of a person despite the fact that they knew or should have known that he was innocent can raise the inference that the investigator has

---

attached to a plaintiff's opposition—only documents attached to a plaintiff's Complaint. *Beverly Oaks.* 983 F.3d at 439; *see also Bd. of Trs. of the Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*, 225 F. Supp. 3d 1106, 1114 (N.D. Cal. 2016) ("[T]he Court may not consider any declaration[s] [nor] exhibits that Plaintiff[s] [have] attached to [their] opposition, nor may the Court consider the facts that Plaintiff[s] assert[] in [their] opposition.") (citation omitted).

Alternatively, the Court *could* take judicial notice of the D.A. Office's Memorandum under Federal Rule of Evidence 201. *Beverly Oaks.* 983 F.3d at 439. However, the Court declines to do so in this instance, as there is no indication that this internal memorandum is published. *See* Fed. R. Evid. 201(b)(2); *Lotus Vaping Techs., LLC v. U.S. Food & Drug Admin.*, 73 F.4th 657, 677 (9th Cir. 2023) (taking judicial notice of FDA's "internal memoranda" because "[t]hese are published materials representing the considered views of the FDA"), *cert. pet. docketed* (Feb. 13, 2024); *Duren v. Doerer*, No. 5:23-cv-00772-FWS-KES, 2023 WL 9289984, at *4 n.2 & n.3 (C.D. Cal. Dec. 1, 2023) (taking judicial notice of the Bureau of Prison's internal memoranda because they are published); *see also Korematsu v. United States*, 584 F. Supp. 1406, 1417 (N.D. Cal. 1984) (declining to judicially notice "internal government memoranda and letters"); *Harper v. City of Arcadia*, No. CV 08-2286 MMM (MANx), 2008 WL 11410019, at *3 (C.D. Cal. July 14, 2008) (declining to take judicial notice of internal police memoranda because "[t]here is no indication that the internal police memoranda proffered by Zappia are publicly available or they constitute police department reports; given that they describe personal interoffice relationships and allegations of misconduct, together with the need for investigation of the conduct, it is unlikely that the public would have access to them.") (footnote and citations omitted).

Accordingly, the Court declines to take judicial notice of the D.A. Office's Memorandum as the Memorandum is attached to Plaintiffs' Opposition, and there is no indication the Memorandum is publicly available.

[8] Though there is a split in authority as to whether a "deliberate fabrication of evidence claim necessarily fails if the plaintiff was *acquitted*," *Spencer*, 857 F.3d at 802 n.4 (emphasis in original) (citation omitted), the Ninth Circuit has indicated that "a § 1983 plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is enough." *Caldwell v. City and Cnty. of S.F.*, 889 F.3d 1105, 1115 (9th Cir. 2018) (collecting citations); *see also Gonzalez v. City of Huntington Beach*, No. SA CV 18-0953-DOC (DFMx), 2018 WL 9537311, at *5–*6 (C.D. Cal. Oct. 12, 2018) (allowing plaintiff to proceed with deliberate fabrication claim even though District Attorney dismissed criminal charges against him).

Plaintiffs allege they were charged and acquitted. (Doc. 5at ¶ 28.) This is sufficient to show a deprivation of liberty.

1    an unlawful motivation to frame an innocent person." *Id.* (cleaned up) (internal quotation marks
2    and citations omitted).

3    However, "withholding exculpatory evidence cannot in itself support a
4    deliberate-fabrication-of-evidence claim"—deliberate fabrication "must mean something more
5    than a mere omission." *O'Doan v. Sanford*, 991 F.3d 1027, 1045 (9th Cir. 2021) (cleaned up)
6    (internal quotation marks and citation omitted); *see also Highbaugh v. Caitham*, No. C 20-03911
7    WHA, 2021 WL 3141215, at *9 (N.D. Cal. July 26, 2021) (dismissing deliberate fabrication
8    claim premised on theory that detective withheld potentially exculpatory evidence).

9    In their Complaint, Plaintiffs maintain that:  (1) Defendants "withheld" "25,000 pages of
10   discovery . . . for unreasonable amounts of time," even though the District Attorney possessed
11   such discovery; (2) the District Attorney and her Office drafted a memorandum stating that the
12   detective on the case had notified sheriff investigators that she was not interested in serving a
13   warrant because she was concerned for her safety; (3) the District Attorney "did not divulge the
14   memorandum to defense counsel for PLAINTIFFS until two and [a] half years into the
15   proceedings"; (4) the judge in Plaintiffs' criminal trial removed the District Attorney as a
16   prosecutor "due to evidence tampering" and appointed two subsequent District Attorneys to
17   prosecute the case; (5) the third District Attorney shared the same building and worked on the
18   same office as the first District Attorney on the case; and (6) withheld exculpatory surveillance
19   video evidence proved Plaintiffs were innocent of all charges, resulting in their acquittal.  (Doc.
20   1-1 at ¶¶ 21–30 (emphasis in original).)

21   In each allegation, Plaintiffs have failed to show any *fabrication* of evidence; rather,
22   Plaintiffs allege Defendants *withheld* such exculpatory evidence—the 25,000 pages of
23   documents, the surveillance footage, the D.A. Office's Memorandum, etc.  Such withholding of
24   evidence cannot plausibly sustain this claim.  *O'Doan*, 991 F.3d at 1045; *see also Devereaux v.*
25   *Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) ("[A] *Brady* violation cannot in itself support a
26   deliberate-fabrication-of-evidence claim").  Nor can Plaintiffs plausibly allege that the third
27   District Attorney working in the same office as the recused District Attorney states a *fabrication*
28   *of evidence* claim.  This states neither direct nor circumstantial evidence.  *Spencer*, 857 F.3d at

8

793.

Furthermore, Plaintiffs only provide conclusory allegations that Defendants "fabricat[ed] and conceal[ed] evidence[] [and] witnesses," "provid[ed] false reports," "deliberately engaged in unconstitutional investigation techniques, testified falsely, tampered evidence, fabricated evidence, and acted in such manner to yield false evidence, which led to presentation of false evidence," and "acted in a manner so abusive of justice that they knew or should have known that their actions would . . . yield false and fabricated evidence." (Doc. 5 at ¶¶ 32–35.) Each of these allegations are conclusory and provides only a threadbare recitation for the elements of a deliberate fabrication of evidence claim. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) ("Conclusory allegations and unreasonable inferences do not provide such a basis" to plausibly state a claim); *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 713 (9th Cir. 2023) ("Although a reviewing court must accept a complaint's factual allegations as true, the same is not true of legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (cleaned up) (internal quotation marks and citation omitted).

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' first cause of action of fabrication of evidence. As Plaintiffs' conspiracy to fabricate evidence claim "rises and falls with [their] fabrication claim against the [County] officials," dismissal of Plaintiffs' fabrication of evidence claim similarly "requires dismissal of the conspiracy claim as well." *Toledano v. Marconi*, No. 8:22-cv-01331-MWF-BFM, 2024 WL 1310696, at *12 (C.D. Cal. Jan. 30, 2024), *R. & R. adopted*, 2024 WL 1320975 (C.D. Cal. Mar. 27, 2024); *see also San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 658 F.3d 725, 740 (9th Cir. 2009) ("[T]he absence of any actionable constitutional violation negates by definition the existence of a conspiracy to violate constitutional rights.") (citation omitted). The Court therefore also **GRANTS** Defendants' Motion to Dismiss Plaintiffs' second cause of action for conspiracy to fabricate.

C. Supervisory Liability

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor is

liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) (internal quotation marks and citation omitted).

Importantly, Plaintiffs bring this supervisorial liability claim against the County and Sheriff's Office.[9], [10] (Doc. 5 at ¶ 51.) Plaintiffs allege that the County and Sheriff's Office failed to ensure that Lewis and Contreras adequately performed their duties. (*Id.* at ¶ 51.) However, "supervisory liability is different than entity liability." *Decastro v. Las Vegas Metro. Police Dep't*, No. 2:23-cv-00580-APG-EJY, 2023 WL 6992390, at *6 (D. Nev. Oct. 23, 2023) (citing *Vazquez*, 949 F.3d at 1166). Rather, "[s]upervisory liability represents a form of personal liability against an individual, while *municipal liability* is entity liability." *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1222 (D. Az. 2003) (emphasis added). "Supervisory liability concerns whether supervisory officials' own action or inaction subjected the Plaintiff to the deprivation of [their] federally protected rights. Generally, liability exists for supervisory officials if they personally participated in the wrongful conduct or breached a duty imposed by law." *Id.* (collecting cases). "In contrast, municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs['] federally protected rights. *Id.* at 1222–23 (citation omitted). Thus, Plaintiffs cannot maintain their claims for supervisory liability against these two entities; they may only bring claims for *Monell* liability against these Defendants. The Court therefore **GRANTS** Defendants' Motion to Dismiss Plaintiffs' third cause of action for supervisorial liability.

D. Malicious Prosecution

"A malicious prosecution action, in California, has three elements: (1) the prosecution 'was commenced by or at the direction of the defendant and was pursued to a legal termination' in the plaintiff's favor; (2) 'was brought without probable cause'; and (3) 'was initiated with malice.'" *Myles v. United States*, 47 F.4th 1005, 1014 (9th Cir. 2022) (quoting

---

[9] The Court has already dismissed Lewis from this action. Accordingly, the Court will omit reference to Lewis for all future causes of action against her.

[10] Plaintiffs also bring this claim against the District Attorney's Office. However, the Court has already dismissed all claims against the D.A.'s Office with prejudice. *Supra*.

*Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 341 (2004)).

Defendants move to dismiss this claim because the Complaint fails to "allege that Defendants prosecuted Plaintiffs without probable cause." (Doc. 9 at 6.) Plaintiffs insist that their Complaint "sufficiently alleges that the arresting officers arrested Plaintiff[s] without probable cause," and point to the D.A. Office's Memorandum as a sufficient allegation of evidence purportedly supporting the lack of probable cause. (Doc. 12 at 18.)

Plaintiffs' argument misses the mark. A claim for malicious prosecution is entirely separate from whether law enforcement officers had probable cause to make an *arrest*. *See Myles*, 47 F.4th at 1014. Instead, the central focus for this claim is whether a prosecutor pursued criminal charges against a defendant without probable cause and initiated with malice. *Id.* Plaintiffs have entirely failed to allege that Defendants prosecuted their case without probable cause, and state no facts regarding a showing of malice on behalf of Defendants in their prosecution. *Myles*, 47 F.4th at 1014. The failure to plead facts showing that Defendants lacked probable cause in their initial prosecution, and brought their prosecution with malice, is fatal to this cause of action.[11] *See id.*; *see also Zox LLC v. W. Am. Ins. Co.*, No. 23-55125, 2024 WL 512561, at *1 (9th Cir. Feb. 9, 2024) (summary judgment context: "The Zox Brothers did not plead facts, nor provide extrinsic evidence, to satisfy any of the requisite elements of a malicious prosecution claim: they did not demonstrate that Zox initiated or maintained an action without probable cause[] [and] with malice . . . [T]he Pleadings did not trigger coverage for malicious prosecution.") (citation omitted). The Court therefore **GRANTS** Defendants' Motion to Dismiss Plaintiffs' fourth cause of action for malicious prosecution.

E. Brady Violations

Plaintiffs' fifth cause of action launches a *Brady* violation claim against all Defendants for their alleged failure to disclose exculpatory evidence during Plaintiffs' underlying criminal case. (Doc. 5 at 14.) Defendants move to dismiss this claim for two reasons: First, Defendants propose that Plaintiffs' claim must fail because they were acquitted; second, Defendants highlight

---

[11] If anything, in their fabrication-of-evidence claim, Plaintiffs suggest Defendants indeed had probable cause in their prosecution. (*See* Doc. 5 at ¶ 37 (". . . despite the existence of probable cause").)

that the Complaint fails to allege "when the criminal trial began in relation to when the [Office's] Memo[randum] was disclosed" to infer whether the "delayed disclosure prejudiced Plaintiffs' criminal defense." (Doc. 9 at 7.) The Court agrees with Defendants' first point and grants the motion on this basis.

Recently, the Ninth Circuit issued its decision in *Parker v. County of Riverside*, which is directly on-point. 78 F.4th 1109 (9th Cir. 2023). In that case, "Roger Wayne Parker was arrested for murder and held for almost four years before the charges against him were dismissed, months after another person confessed to the crime." *Id.* at 1111. Parker sued the County of Riverside and its various officials under Section 1983, "claiming that they had violated his due process rights under *Brady* . . . by suppressing the separate confession." *Id.* Ultimately, the Court concluded that "[t]he difficulty in this case is that there was no judicial proceeding that could be affected by the withheld confession. Without that, Parker cannot show *Brady* prejudice, and his *Brady* claim fails." *Id.* at 1113 (footnote omitted).

Thus, the Ninth Circuit reversed the district court's decision for two reasons. First, the Court reasoned, "the cause of Parker's continued detention was not the [exculpatory evidence], but the DA's continued prosecution even after receiving [the exculpatory evidence]. Had the DA immediately dismissed the charges against Parker after learning of the [exculpatory evidence], he would not have been detained for the extra six months, whether or not the [evidence] had been turned over." *Id.* at 1114. Second, the Court noted that "most other courts have required *a conviction* to establish prejudice." *Id.* (emphasis added) (collecting cases). "[N]either the Ninth Circuit nor any other circuit has found *Brady* prejudice when the nondisclosure did not affect the outcome of a criminal proceeding." *Id.*; *see also Puccetti v. Spencer*, 476 F. App'x 658, 660–61 (9th Cir. 2011) ("The district court correctly reasoned that because the plaintiffs' criminal charges were dismissed, the plaintiffs cannot show that any suppressed evidence could have produced a different result at trial.") (citation omitted).

Plaintiffs' Complaint suffers from the same flaws as in *Parker*. First, Plaintiffs allege that Defendants continued to hold them "in pre-trial detention for approximately five years" even though they allegedly held exculpatory surveillance footage showing their innocence. (Doc. 5 at

12

¶¶ 28–30.) Like *Parker*, however, the cause of their detention is Defendants' continued prosecution and detention of Plaintiffs, even in the face of exculpatory evidence. "To implicate *Brady*, the harm must result from the government's failure to disclose material exculpatory or impeaching evidence." *Parker*, 78 F.4th at 1114. Plaintiffs' detention is untethered to the disclosure of the videotape. *Id.* Second, Plaintiffs admit that they "were acquitted of all charges" and their trial "Judge dismissed any and all actions filed against Plaintiffs upon discovery and information of fatally tainted evidence against" them. (Doc. 5 at ¶¶ 28, 61.) Plaintiffs do not allege that they were convicted, only held in pre-trial detention. *Brady* thus cannot support their claim, as a *Brady* violation requires a conviction to establish prejudice. *Parker*, 78 F.4th at 1114; *Puccetti*, 476 F. App'x at 660–61.

The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiffs' fifth cause of action for alleging a *Brady* violation. Without an underlying *Brady* violation, Plaintiffs cannot plausibly allege a conspiracy to commit *Brady* violations. (Doc. 5 at 16); *San Diego Police Officers' Ass'n*, 658 F.3d at 740. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiffs' sixth cause of action for conspiracy to commit *Brady* violations.

F.  Monell Violations

To sustain a *Monell* claim, Plaintiffs "must show that the action that caused their constitutional injury was part of an official municipal policy of some nature." *Scanlon v. Cnty. of L.A.*, 92 F.4th 781, 811 (9th Cir. 2024) (internal quotation marks and citation omitted). "There are four criteria: (1) [Plaintiffs] had a constitutional right of which [they] were deprived; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to [their] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Id.* (internal quotation marks and citation omitted).[12] There are "three ways a plaintiff can satisfy *Monell*'s policy requirement: The municipal government acts pursuant to an express official policy, the government maintains a longstanding practice or custom, or the act was committed or

---

[12] The Court notes two inherent obstacles that Plaintiffs already face: (1) they have yet to plausibly plead the existence of an underlying constitutional violation; and (2) *Monell* claims may be raised *only* against municipalities. *Scanlon*, 92 F.4th at 811; *see also Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 829 (9th Cir. 2023) ("*Monell* established that *municipalities* can be liable under § 1983 for constitutional violations . . .") (emphasis added). Contreras cannot be held liable under *Monell*.

13

ratified by an official with policy-making authority." *Id.* at 811–12 (citation omitted); *see also Steel v. Alameda Cnty. Sheriff's Off.*, 428 F. Supp. 3d 235, 240 (N.D. Cal. 2019).

Plaintiffs represent that these Defendants "have maintained and carried out an unconstitutional policy, practice and/or custom of violating the constitutional rights of criminal defendants." (Doc. 5 at ¶ 86.)  Plaintiffs also represent that Defendants' "actions as set forth above were a motivating force behind the violations of Plaintiff[s'] rights as well as other similarly situated criminal defendants as set forth in this complaint." (*Id.* at ¶ 88.)

Notwithstanding the fact that Plaintiffs have failed to adequately plead any underlying constitutional violations, even if the Court accepts Plaintiffs' long list of alleged constitutional violations, (Doc. 5 at ¶ 82), the Court *still* must grant Defendants' motion, as Plaintiffs have only brought conclusory and vague allegations of an existing policy. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012) (applying *Twombly* and *Iqbal* pleading standards to *Monell* claims); *see also Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 938 (S.D. Cal. 2022) ("Plaintiff must do more than allege in a conclusory fashion that the County maintains an unwritten policy or custom of permitting the types of wrongs Plaintiff experienced.") (collecting cases); *Correa v. Whittier City Police Dep't*, No. 2:22-cv-00581-VBF (MAA), 2023 WL 10408773, at *7 (C.D. Cal. Dec. 7, 2023) ("The FAC merely states that Defendants have a policy, custom, or practice regarding certain general subjects . . . The FAC's vague and conclusory allegations of Defendants' policies and customs do not suffice.").  Plaintiffs must provide actual *factual allegations* detailing a municipal policy, practice, custom, etc. to plausibly plead such a claim. Thus, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' seventh cause of action under *Monell*.  To the extent the complaint seeks to impose liability on the entities in the First through Sixth and Eighth causes of action, the complaint is **DISMISSED** as to the entities **with prejudice**. The sole method for imposing liability on a municipality under 42 USC § 1983 is under *Monell*.

G. Speedy Trial

Plaintiffs' last cause of action is a claim under the Sixth and Fourteenth Amendments for violation of their constitutional rights "to a speedy trial, to counsel, and to due process and

substantive due process." (Doc. 5 at 21.)  Plaintiffs "are informed and believe . . . that [the County and Sheriff's Office] failed to timely bring the Plaintiffs' cases to trial," and abandoned their case against them, thereby holding Plaintiffs as pre-trial detainees "for such [an] inordinately long period of time that [their] due process rights and [their] rights to speedy trial were violated." (*Id.* at ¶ 96.)  This arises out of the fact that Plaintiffs allege Defendants held them in pre-trial detention for approximately five years before the judge dismissed their case. (*Id.* at ¶ 97.) Defendants move to dismiss this claim for being "exceedingly vague and conclusory." (Doc. 9 at 8.)

First, the Court must dismiss this claim for lack of Article III standing.[13]  Plaintiffs have the burden to show that they have Article III standing for each claim pressed and for each of form of requested relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021); *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021).  Standing requires that "the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (internal quotation marks and citation omitted).  Plaintiffs complain about their prolonged pre-detention holding, in violation of their Sixth Amendment right to a speedy trial. (Doc. 5 at ¶ 96.)  However, Plaintiffs have failed to tie this alleged injury to either the County or Sheriff's Office for this claim and have failed to show how liability extends to these entities, rather than the D.A.'s Office.[14]

Second, "[m]unicipalities and local governments can be sued under § 1983 for constitutional deprivations caused by governmental policy or custom." *Perez v. City of Fresno*, 98 F.4th 919, 931 (9th Cir. 2024) (citing *Monell*, 436 U.S. at 690); *see also Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 829 (9th Cir. 2023) (applying *Monell* liability to a county).  Thus,

---

[13] "[F]ederal courts have a duty to raise, sua sponte, questions of standing before addressing the merits" of any claim. *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("[A] jurisdictional issue such as Article III standing may be raised *sua sponte* by the court at any time.") (citation omitted).

[14] If however, the D.A.'s Office is the only entity responsible for this alleged injury, the Court has already determined it is immune from liability. *Supra*.

15

"to hold a county liable under § 1983, a plaintiff must identify a county-level 'policy' or 'custom' that caused his alleged injury." *Belmonte v. King Cnty.*, No. 2:24-cv-00518-JNW-DWC, 2024 WL 1741166, at *2 (W.D. Wash. Apr. 23, 2024); *Steel v. Alameda Cnty. Sheriff's Off.*, 428 F. Supp. 3d 235, 240 (N.D. Cal. 2019) ("To hold local entities like the Sheriff's Office or Alameda County liable under Section 1983, plaintiffs must plausibly allege that the 'challenged conditions were part of a policy, custom or practice officially adopted by [those] defendants.'") (quoting *Upshaw v. Alameda Cnty.*, 377 F. Supp. 3d 1027, 1032 (N.D. Cal. 2019)). Evidently, Plaintiffs have failed to allege any type of policy, custom, or any kind of *Monell* liability against the County and Sheriff's Office for this claim. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiffs' eighth cause of action arising under the Sixth Amendment on this basis.

### H. Leave to Amend

The Ninth Circuit has admonished district courts to *sua sponte* determine whether leave to amend should be granted. *See Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1208 (9th Cir. 2022) ("[W]e have repeatedly instructed that leave to amend should be given, even sua sponte, if amendment could cure a pleading defect."). Courts have broad discretion to grant leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). In determining whether a plaintiff should be granted leave to amend, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020) (internal quotation marks and citation omitted). Generally, Rule 15 advises that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[i]t is the black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint," unless there is "a clear showing that amendment would be futile." *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) (internal quotation marks and citation omitted).

Plaintiffs need to allege more facts for their claims brought under theories of malicious prosecution, *Monell* liability, and the Sixth Amendment prolonged detention claim to cure the deficiencies in their Complaint, meaning it is not futile for Plaintiffs to amend these claims. The

1  Court therefore **GRANTS** Plaintiffs leave to amend *only one time* to amend their fourth and

2  eighth causes of action as to Contreras and the seventh cause of action as to the County of

3  Kern/Kern County Sheriff's Office.  The Court may not grant further leave to amend thereafter.

4  However, as Plaintiffs' first and second causes of action arising under a deliberate

5  fabrication of evidence claim both stem from a withholding of evidence theory, leave to amend

6  these claims is futile.  Similarly, Plaintiffs' claim for supervisorial liability cannot sustain against

7  such entities; granting leave to amend is futile in this instance.  Plaintiffs also cannot maintain a

8  *Brady* violation claim when they were acquitted without a conviction.  Granting leave to amend

9  their fifth and sixth causes of action is similarly futile.  As such, the Court **DENIES** Plaintiffs

10  leave to amend their first and second causes of action arising under a deliberate fabrication of

11  evidence theory, their third cause of action for supervisorial liability, and their fifth and sixth

12  causes of action arising under alleged *Brady* violations, as Plaintiffs cannot cure such deficiencies

13  in their Complaint with an amended pleading.

**CONCLUSION**

Based upon the foregoing, the Court **ORDERS**:

(1) Defendant's Motion to Dismiss (Doc. 9) is **GRANTED**.  Defendants' Request for Judicial Notice (Doc. 10) is **DENIED AS MOOT**.

(2) All claims brought against Defendants Courtney Lewis and the Kern County District Attorney's Office are **DISMISSED WITH PREJUDICE**.

(3) The Court **DISMISSES WITH PREJUDICE** Plaintiffs' *Monell* claim brought against Contreras.

(4) Plaintiffs' first, second, third, fifth, and sixth causes of action are **DISMISSED WITHOUT LEAVE TO AMEND**.  Plaintiffs may amend their fourth, seventh and eighth causes of action.

///

///

///

//

(5) **Within 21 days**, Plaintiffs may file an amended complaint or a notice of dismissal. Failure to timely file either document will result in dismissal of their case with prejudice pursuant to Rule 41(b).[15]

IT IS SO ORDERED.

Dated:   **May 3, 2024**

UNITED STATES DISTRICT JUDGE

---

[15] See *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063–1065 (9th Cir. 2004) (stating that a plaintiff's failure to take any action in response to a court's ultimatum to the plaintiff to either amend their complaint or indicate to the court that it will not do so "is properly met with the sanction of a Rule 41(b) dismissal").